UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

500 ASSOCIATES, INC.                                                                    PLAINTIFF

v.                                                              CIVIL ACTION NO. 3:96CV-847-S

VERMONT AMERICAN CORPORATION                                                       DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on cross-motions for summary judgment on the claim of the plaintiff, 500 Associates, Inc., to recoup expenses under a provision of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a)(4)(B).[1]

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-

---

[1] Count I of the Complaint also references CERCLA § 113(g) pertaining to declaratory relief. It appears that the plaintiff has abandoned this aspect of the claim, as no mention is made of this subsection in any of its briefs. Additionally, it has not responded to the defendant's argument seeking summary judgment on this aspect of the claim.

moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

This action was brought in 1996 in connection with a now 17-year-old environmental clean-up dispute involving a piece of property formerly owned by the defendant, Vermont American Corporation ("VAC"). *500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet*, 204 S.W.3d 121 (Ky.App. 2006) recounts the facts underlying this action, as found by the Environmental Protection Cabinet's hearing officer and affirmed by the Kentucky Court of Appeals.

From 1949 to 1986, VAC owned the property in issue at 500 East Main Street, Louisville, Kentucky. VAC's American Saw and Tool Division manufactured circular saw blades and hand tools there. During the manufacturing process, it generated various hazardous wastes associated with its electroplating and heat treatment operations. In March, 1986, VAC closed its manufacturing facility and took steps to decommission the property. Waste and residues were left in pits and trenches on the property.

In 1986, 500 Associates, Inc., a group of commercial real estate developers, entered into a contract with VAC to purchase the property. It hired an environmental consultant who performed a cursory environmental audit. The audit, which consisted of an on-site inspection, a review of records of operations and permits, and a discussion with VAC's health and safety inspector, yielded the conclusion that VAC had adequately decontaminated the plating and waste treatment areas. VAC was registered with the Environmental and Public Protection Cabinet ("the Cabinet") as a large

quantity hazardous waste generator, producing an average of 65,470 gallons of waste water per day. Additionally, the safety inspector acknowledged one spill of 100 gallons of nickel, but denied any other releases of hazardous substances. The auditor did not review available public records concerning the property. In fact, VAC released untreated waste water and hazardous substances on numerous occasions during its ownership.

During the audit, chromium contamination was found. 500 Associates was notified of the presence of this hazardous material and the fact that this and other hazardous materials were handled by VAC at the site, but soil samples were not taken and the auditor did not recommend further testing. Thereafter, 500 Associates purchased the property from VAC.

In 1990, 500 Associates demolished a portion of a building in the area of the former electroplating and waste treatment operations in order to create a courtyard. It moved concrete and exposed soil in the process. Also in 1990, it entered into an agreement to sell the property to Doe Anderson Advertising Agency. Doe Anderson hired its own consultant to conduct an environmental audit which included a review of public records and soil and groundwater sampling.

This audit revealed the presence of various inorganic constituents, elevated levels of metals, volatile organic compounds in the soil and inorganic constituents and chlorinated solvents in the groundwater. This assessment recommended further investigation of the environmental impact of the contamination. 500 Associates was provided a copy of the audit results which included the results of soil samples revealing contamination below the now-removed concrete floors. 500 Associates contacted VAC who denied having spills or releases during its operations which would account for the contamination. 500 Associates did not notify the Cabinet about the contamination on the property and did not take any remedial action.

The auditors then conducted the second phase of the audit to determine the concentrations of contaminants in the soil, water, and air. Analytic results confirmed the presence of inorganic constituents and volatile organic compounds. Again, the audit results were not brought to the attention of the Cabinet and no remedial action was taken.

In 1991, 500 Associates retained another environmental consultant to conduct soil samples. Results from 44 soil and gas samples across the property revealed volatile organic compounds. This consultant confirmed the presence of hazardous substances but concluded that the source was likely another property. For a third time, 500 Associates did not report the results of the audit nor take remedial action. Doe Anderson then withdrew from the purchase agreement.

In 1994, the Cabinet began an investigation of the property and requested information concerning releases of hazardous substances from VAC and 500 Associates. Over the next four years, the Cabinet evaluated the contamination while VAC and 500 Associates continued to deny responsibility. In February 1998 the Cabinet filed an environmental enforcement action against both VAC and 500 Associates. The complaint alleged that both parties were strictly liable for the releases, that they should be ordered to characterize the nature and extent of the releases, correct the effects, and reimburse the Cabinet for its actual and necessary costs. 500 Associates sought contribution from VAC and asserted various defenses to the action. A 17-day hearing was held before the Cabinet's hearing officer. On May 8, 2002, the hearing officer issued an opinion finding VAC and 500 Associates jointly and severally liable for the releases and recommending civil penalties in the amount of $160,000.00 against VAC and $10,500.00 against 500 Associates for its conduct in causing the releases and in failing to take action to remedy the effects on the

environment. The Cabinet Secretary accepted and adopted the hearing officer's report in June, 2002. Various appeals in the Kentucky courts then ensued.

On September 2, 2006, the Kentucky Court of Appeals issued a final decision in the case. Pertinent to this motion, the court found substantial evidence to uphold the finding that 500 Associates failed to exercise "due care" in the management of its property, as required under CERCLA:

> [500 Associates] demolished buildings without taking any precautions to prevent materials in the buildings from being released to the environment. By removing the concrete floor and leaving material under it exposed to the elements, it allowed rainfall to be introduced into contaminated areas...500 also left exposed pits formerly associated with manufacturing operations after removing the roof and walls of the buildings. An additional failure to exercise due care occurred in March, 1997, when one of the 500 principals helped direct excavation activities intended to expose materials to obtain samples. The areas exposed and sampled were specifically selected because they were points of possible contamination, and some samples from exposed areas did exhibit contamination. However, 500 left those exposed areas unprotected. These exposed areas remained unprotected during at least one heavy thunderstorm. This rainfall allowed contamination that might have been present to travel to some extent.

204 S.W.3d at 139, quoting Hearing Officer's Report. The Court of Appeals found that 500 Associates was properly denied the benefit of an "innocent purchaser" defense as there was evidence that its initial investigation of the property had been inadequate, that it failed to exercise due care when it demolished structures on the site, and that it took no action to abate the problem once it knew of contamination on the property. *Id* at 140. The Court of Appeals affirmed the hearing officer's conclusion that "[t]o reward 500's lack of diligence with a liability exemption would be directly contrary to the policy of CERCLA, which "does not sanction willful or negligent blindness." *Id.* at 138. The hearing officer acknowledged, however, that as compared with VAC, 500 Associates' culpability was minimal. It also noted that 500 Associates made a minimal effort to

secure the property from further harm of release by installing fencing and a security system. 500 Associates had cooperated with the Cabinet's investigation, while continuing to deny responsibility for the problem.

On March 11, 2008, the Cabinet issued a Final Order addressing cleanup, determining that VAC was 100% responsible for characterizing and remedying the release of contaminants. VAC has paid the Cabinet for its costs and has prepared and submitted the required Site Management Plan to the Cabinet's Division of Waste Management.

While matters progressed before the Cabinet, 500 Associates filed this action against VAC for cost recovery under CERCLA and for other relief under state law in December 1996. VAC filed a cost recovery counterclaim against 500 Associates. Only Count I of the 500 Associates' Complaint remains.[2]

500 Associates contends that it may recover its costs because it "has incurred necessary costs of response as it removed the hazardous substances and took other remedial action." 500 Assoc. Mo. for Summary Judg., p. 9. We find that no genuine issue of material fact exists, all factual matters having been decided by the hearing officer and reviewed and affirmed by the Kentucky courts.

500 Associates filed supplemental exhibits in support of its motion for summary judgment. These exhibits consist primarily of bills, notations, and checks documenting work performed by various environmental consulting firms, attorneys and others. VAC does not contend that 500 Associates did not incur these costs. Rather, the purpose for which the costs were incurred and the

---

[2]Summary judgment was granted on 500 Associates' various state law claims (Dns 25, 26) and on its claim to rescind the sales contract for the property (DN 87, 88). It appears that VAC has abandoned its CERCLA recovery counterclaim. It has moved for summary judgment on the cost recovery claim against it and for dismissal of the complaint. VAC has been found 100% responsible for the characterization and remediation of the contamination, and liability for the releases has been assessed.

nature of the work are only generally described as costs of response to VAC's releases of hazardous substances. *See*, 500 Associates' Mo., p. 11. VAC notes that no specifics concerning 500 Associates' alleged "removal" and "remediation" costs are provided.

CERCLA's cost recovery scheme mandates a particularized showing of the necessity for these costs and the precise connection that they bear to the cleanup. 500 Associates seeks a damages hearing at which it intends to offer further proof concerning these costs. However, we conclude that it cannot establish the requisite elements required for cost recovery under CERCLA. Therefore, no hearing will be necessary.

Congress enacted CERCLA "to clean up hazardous waste sites and to impose the costs of such cleanup on parties responsible for the contamination." *Champion Laboratories, Inc. v. Metex Corporation*, 2009 WL 2496888 (D.N.J. Aug. 13, 2009),[3] *citing, Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). Under the CERCLA scheme, a *prima facie* case for cost recovery under § 9607 has four elements:

(1) The property is a "facility";

(2) There has been a "release" or "threatened release" of a hazardous substance;

(3) The release has caused the plaintiff to incur "necessary costs of response" that are consistent with the NCP; and

(4) The defendant is in one of four categories of potentially responsible parties.

*Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006), *citing, Franklin County Convention Facilities Authority v. American Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001).

---

[3] Cited within this Circuit in *ITT Industries, Inc. v. Borgwarner, Inc.*, 700 F.Supp.2d 848 (W.D.Mich. 2010).

500 Associates cannot identify a "release" or "threatened release" by VAC which created an imminent threat to which 500 Associates responded.  As noted in *Regional Airport Authority,* there must be an "actual and real threat" which "exist[s] before initiating a response action." *Regional Airport Authority*, 460 F.3d at 703.  *See also*, *Sherwin-Williams Company v. City of Hamtramck,* 840 F.Supp. 470, 475 (E.D.Mich. 1993)("[R]emoval actions are short term responses to *imminent threats* to the public safety or the environment.  They are to be undertaken 'in response to an immediate threat to the public welfare or to the environment.'").  Only costs incurred in response to a release which created an imminent threat are recoverable under the statute.

When 500 Associates incurred these costs, VAC had not been conducting operations on the property for in excess of ten years.  However, the record reflects that in the 1990s 500 Associates' (1) failure to exercise due care in evaluating the risks of contamination on this industrial property; (2) careless demolition of structures on the property; (3) exposure of materials and structures to the elements; (4) and failure to report or otherwise address the need for cleanup when contamination became known rendered 500 Associates a contributor to the contamination on the property, albeit a comparatively minor one.  *500 Associates*, 204 S.W.2d at 139.

500 Associates cannot establish that costs for activities such as fencing the area, putting in a security system, and investigating the extent of the contamination were not, in fact, a response to their own negligent acts which the Cabinet found likely caused additional releases of existing contaminants.  500 Associates urged the hearing officer to find liability divisible, and find 500 Associates' contribution to the environmental harm was zero.  The hearing officer rejected this argument, concluding that

> The record provides me no reasonable basis to determine how much of the contamination resulted from the original release, and how much resulted from 500's

> exposure and spread of contamination that has clearly occurred. Unlike the situation in *Brighton Township*, where the defendant suggested apportionment according to volume contributed or to the areas of the site used by a particular defendant, in this case 500 has shown no evidence that its share of the harm can be fairly distinguished from that of VAC. Since there is some element of fault on 500's part, and I cannot fairly apportion the amount, I must conclude that the harm is indivisible and reject 500's defense.

*500 Associates*, 204 S.W.3d at 141, quoting the hearing officer's decision with approval.

*Regional Airport Authority* makes clear that the CERCLA recovery provision is not a wholesale cost-shifting mechanism. Rather, it limits recovery to "necessary"( *ie*., responsive to an imminent threat) costs, lest "the temptation to improve one's property and charge the expense of improvement to someone else" go unchecked. *Regional Airport Authority*, 460 F.3d at 703. While CERCLA removal actions were designed to provide an opportunity for immediate action where necessary (*Sherwin-Williams*, 840 F.Supp at 475), the court has found no case in which response costs were recovered by a party who negligently created or contributed to the exigency. We conclude that 500 Associates cannot establish that an actual and real threat attributable to *VAC's* conduct caused 500 Associates to incur the costs it seeks to recover.

There is no question that VAC was responsible for releases which occurred during their operations and that its decommissioning of the property was inadequate. VAC has been found by the Cabinet to be 100% liable for the cleanup of the contamination. It has been civilly fined for its conduct. It has filed its Site Management Plan for the cleanup of the property, and it has reimbursed the Cabinet for its response costs. However, 500 Associates has been found liable for its actions and has been civilly fined also. It cannot recover from VAC the costs of defending itself either in its business transactions or before the Cabinet or court. 500 Associates can only recover from VAC if it establishes "some nexus between the alleged response cost and an actual effort to respond to

environmental contamination." *Ford Motor Company v. Michigan Consolidated Gas Company,* 2010 WL 3419502 (E.D.Mich. Aug. 27, 2010), *quoting, Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005), *et al.*

500 Associates has failed to establish that its costs were, in fact, response costs. The findings in the record belie 500 Associates' statement that it "[p]aid its officers for their time as they, among other things, investigated the extent of the contamination of the Property, developed removal plans to contain the hazardous substances, and carried out the removal plan to provide a temporary response until Vermont American remediates the property." (Response to VAC's Mo. for Summary Judg., p. 7).

500 Associates asserted unwaveringly throughout the proceedings that it was an "innocent purchaser" entitled to an exemption from liability. In rejecting the defense, the hearing officer noted that CERCLA "does not sanction willful or negligent blindness." (*quoting, United States v. Monsanto Co.,* 858 F.2d 160, 169 (4th Cir. 1988). The court found ample evidence in the record to support the hearing officer's conclusion that, despite its knowledge of the contamination, it did nothing to respond or remediate the problem.

The hearing officer's report reflects 500 Associates' unreasonable reliance upon a cursory environmental audit when it purchased the property. This audit did, in fact, inform 500 Associates that hazardous materials had been handled on the site by VAC and that there was at least one hazardous substance, chromium, on the property. 500 Associates chose, unwisely, to rely on its auditor and do nothing further to investigate. It claims to have had no knowledge of any spills and therefore took no precautions when demolishing buildings in the area of VAC's former electroplating and waste water treatment operations. When preparing to sell the property, it learned

from the potential buyer's auditor that there was contamination found in samples taken from the area where 500 Associates had removed concrete floors. 500 Associates claims to have contacted VAC who again denied that there had been any spills or releases, and 500 Associates performed no further investigation nor did it report the discovery to the Cabinet. In light of its findings, the auditor performed a second assessment of the property. When 500 Associates was informed that the tests confirmed the presence of various inorganic constituents and volatile organic compounds, 500 Associates' response was to hire another consulting firm to conduct soil samples. When this analysis also confirmed the findings, the potential buyer withdrew from the purchase agreement. Again, 500 Associates did not remediate nor did it report on the contamination. The hearing officer found that from 1994 to 1998 both VAC and 500 Associates steadfastly refused to conduct remedial work, necessitating the commencement of the environmental enforcement action.

We conclude, as did the court in *Champion Laboratories, Inc. v. Metex Corporation*, 2009 WL 2466888 (D.D.J. 2009), that 500 Associates cannot recover its costs under § 9607 because the costs cannot be shown to have furthered the cleanup of the property. Instead they were incurred for 500 Associates' own business purposes or were incurred in the course of attempting to convince the Cabinet that it had no liability for the releases. "Simply put, the costs were expended to reallocate costs to another responsible party, the type of services that the Supreme Court held "do not constitute 'necessary costs of response' and [are] not recoverable under CERCLA." *Champion Laboratories*, *supra*., at *23, *quoting, Key Tronic v. United States*, 511 U.S. 809, 820-21 (1994). *See also, Ford Motor Company*, *supra.* (allegations concerning response costs found to lack sufficient specificity for recovery under CERCLA).

Based upon the foregoing analysis, the VAC's motion for summary judgment will be granted and 500 Associates' motion for partial summary judgment will be denied. This opinion disposes of the remaining claim, and the complaint will be dismissed. A separate order will be entered this date in accordance with this opinion.